Meliton LUGO, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–86–246–CR.

Court of Appeals of Texas,
Corpus Christi.

April 16, 1987.
Rehearing Denied May 28, 1987.

Douglas Tinker, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi, for appellee.

Before UTTER, SEERDEN and DORSEY, JJ.

## OPINION

UTTER, Justice.

Appellant was convicted of attempted capital murder and sentenced to serve five years in the Texas Department of Corrections. We affirm the judgment of the trial court.

The offense involved the stabbing of a police officer. Appellant was eligible for probation, and portions of both the appellant's and the State's arguments during the punishment phase focused on the propriety of probation in this case.

Appellant's first point of error complains of the prosecutor's argument during the punishment phase of the trial.

Before the complained-of argument, which is set out below, the prosecutor, in his opening argument, had argued without objection that:

> The people of Nueces County and law enforcement, in general, needs [sic] to be protected from these types of crimes happening, and you, as people on the jury, will tell Mr. Lugo, for the people of Nueces County, we don't allow that, we don't allow it at all.
>
> \* \* \* \* \* \*
>
> Mr. Lugo is gonna come up here and he's gonna ask you to give him probation for this case.
>
> \* \* \* \* \* \*
>
> Probation means the release of a convicted defendant. Now what are they gonna think about law and order if they think you can go out and commit a crime as

serious as this crime, and you can be released?

> \* \* \* \* \* \*
>
> This case is about punishing Meliton Lugo for an act that he did that was extremely violent, and this [is] also about deterring anybody else from committing the same crime.

Appellant then argued that probation is punishment and that appellant would be in a better financial position to compensate the victim if he were on probation rather than in jail.

The State, in its closing argument, then responded that the trial concerned the stabbing of a police officer, that a conviction without a sentence is painless, and that the crime was too serious to warrant probation. The State then made the following argument:

> Probation, in this case, members of the jury, would be a slap on the wrist to the Defendant, would be a slap in the face to law enforcement in this community.

Defense counsel objected that this argument was an improper plea for law enforcement. The trial court sustained appellant's objection, instructed the jury to disregard the last comment, but denied appellant's motion for mistrial. The State continued:

> \* \* \* \* \* \*
>
> Probation, in this case, would be a slap in the face to law and order in this community. It would be a slap in the face to the law we stand for, the protection of our police officers, who try to protect us. It would be a pat on the back for every man in this community, who, when he gets a few drinks under his belt, wants to take on a cop. We would be telling them to take on a cop and get five stabs for free, but you will be released, to go back home, after you do suffer some inconvenience for having to come to court for five or six days. [no objection]
>
> \* \* \* \* \* \*
>
> Members of the jury, the police lay their lives on the line nearly everyday, for us. Now, let's give the police some protection. [objection overruled]

Appellant contends that these statements had the effect of telling the jury that persons in law enforcement expected appellant not to be placed on probation, and that these statements require us to reverse his conviction. Appellant relies on cases which hold that error cannot be cured where the State asserts that the community expects or demands a certain punishment. *See Cortez v. State*, 683 S.W.2d 419 (Tex.Crim. App.1984); *Goocher v. State*, 633 S.W.2d 860 (Tex.Crim.App.1982); *Pennington v. State*, 171 Tex.Cr.R. 130, 345 S.W.2d 527 (1961).

■ We begin with the State's argument that probation would be a "slap in the face to law enforcement in this community." Initially, we note that an argument that probation is inappropriate for a certain offense and will not deter crime has been upheld in the past. *Overstreet v. State*, 470 S.W.2d 653 (Tex.Crim.App.1971); *Moreno v. State*, 678 S.W.2d 249 (Tex.App.— Corpus Christi 1984, pet. ref'd). Arguments which state that probation would encourage crime have also been upheld in the past. *Williams v. State*, 607 S.W.2d 577 (Tex.Crim.App.1980); *Bacon v. State*, 500 S.W.2d 512 (Tex.Crim.App.1973). Accordingly, if the State's argument was a plea to the jury not to give probation, then the argument was a proper plea for law enforcement.

To reverse appellant's conviction, we would have to hold that the State's reference to "law enforcement" was really a reference to the police department, and in turn that an argument that "probation would be a slap in the face to the Police Department," is really an argument that "the Police Department expects or demands incarceration," and in turn, that this argument equates to an argument that the "community expects or demands incarceration."

There is nothing in the record to show that the State's reference to "law enforcement in the community" was not a reference to the *concept* of law enforcement. If, however, we concede that "law enforcement" was a pseudonym for "the police department" it does not follow that the

argument necessarily conveys the message that the police department expected or demanded incarceration. Indeed, the argument could be interpreted as a plea to protect the police. The Court of Criminal Appeals has upheld an argument by the District Attorney of Nueces County that "Somebody protect our policemen...." *Ridyolph v. State*, 545 S.W.2d 784, 790 (Tex.Crim.App.1977). Arguments to protect the citizens of the county, women, and children have been approved. *See Stone v. State*, 574 S.W.2d 85 (Tex.Crim.App.1978); *Anderson v. State*, 486 S.W.2d 569 (Tex. Crim.App.1972); *Myers v. State*, 468 S.W.2d 847 (Tex.Crim.App.1971).

Furthermore, even if we substitute the term "police department" for "law enforcement," it does not follow that the argument [that the police department wants incarceration] must be treated the same as an argument that the community wants incarceration. Indeed, one court of appeals has already held that a similar argument, while improper, could be cured by instruction. *Garrett v. State*, 639 S.W.2d 18, 22 (Tex. App.—Fort Worth 1982), *aff'd on other grounds*, 658 S.W.2d 592 (Tex.Crim.App. 1983) (" 'every dedicated sincere policeman who had to bow their heads,' would appreciate a guilty verdict."). The Fort Worth Court stated that this argument does not rise to the same level of impropriety as an argument of what the community expects.

The distinction between these types of arguments is valid. Jurors are repeatedly instructed that they represent the community. Arguments that the community expects a certain punishment places improper pressure upon the jury to "represent" the community's desires *and* is, of course, allowing facts not in evidence to be considered. The argument that an individual or department wants a certain punishment is improper because it places facts not in evidence before the jury, but it does not bring the same "representative of the community" pressure to bear on the jurors.

Those cases which have fallen within the incurable category have always unambiguously appealed to community demands or expectations. In the following cases, the

Court of Criminal Appeals has held that prosecutor's statements did not directly refer to the demands or expectations of the community so as to require a reversal.

> You can see the people in the courtroom. These are the people here that will gain an impression by the verdict that you write down here. *Smith v. State*, 418 S.W.2d 683 (Tex.Crim.App.1967).

> You represent the interests that some million people who live in Dallas County, have in the outcome of this case. *Myers v. State*, 468 S.W.2d 847 (Tex.Crim.App. 1971).

> We, of course, who we represent, as I told you yesterday, a million two hundred thousand people living in this county, we can't fit them all into court. We can't have you sympathize with our side. You can't see Helen Bothwell—*Bothwell v. State*, 500 S.W.2d 128 (Tex.Crim.App. 1973).

> The members of the jury will become a part of law enforcement ... and will be the voice of conscience of the people of this County and State. *Brown v. State*, 508 S.W.2d 91 (Tex.Crim.App.1974).

> I know that what I am asking you is no easy task, but I ask you to consider this: What are the school children in our public schools going to think.... *Carver v. State*, 510 S.W.2d 349 (Tex.Crim.App. 1974).

> The people of this community will know what your verdict is. *McCall v. State*, 540 S.W.2d 717 (Tex.Crim.App.1976).

> But some of the people of McClennan County are wanting Juries to get tough with some of these defendants and to let them know that the people of McClennan County don't appreciate all of this crime that has been going on in the county. *Crawford v. State*, 511 S.W.2d 14 (Tex. Crim.App.1974).

> I ask in behalf of myself as District Attorney and I ask in behalf of the three hundred thousand people I represent. *Ridyolph v. State*, 545 S.W.2d 784 (Tex. Crim.App.1977).

> Now it is up to you. No one can adequately punish this individual for taking that woman's life but you twelve people.

> No one can tell the community what will happen when you murder an eighty-year-old woman during the course of robbery except you twelve people. *Duffy v. State*, 567 S.W.2d 197 (Tex.Crim.App. 1978).

> The twelve of you were selected to represent the people of Harris County and the State of Texas ... Now, you—and as you think about that, think about it right now. Because I think you will want to give them an answer you can be proud of.... *Whittington v. State*, 580 S.W.2d 845 (Tex.Crim.App.1979).

> Murder is murder anyway you look at it. Murder is something that the State of Texas and Tarrant County, that I represent, does not regard as a probatable offense. The State would ask you not to consider probation.... People must not feel in our community that murder can be committed and that somebody can be found guilty for it and no punishment assessed that is not commensurable with the standard of our community. *Johnson v. State* 604 S.W.2d 128 (Tex.Crim. App.1980).

We believe that under the authorities quoted above the remarks of the prosecutor in this case were not reversible jury arguments because they did not unequivocally refer to community expectations or demands of a certain punishment. Appellant's first point of error is overruled.

By his second point of error, appellant contends that the trial court erred in failing to define "insanity" in the instruction to the jury on temporary insanity caused by intoxication, submitted at the punishment phase.

■ Appellant did not object to the charge for failure to include a definition of insanity. We have found no cases which directly hold that failure to request a definition of insanity in an instruction on temporary insanity caused by intoxication waives any error.

Appellant cites *Hart v. State*, 537 S.W.2d 21 (Tex.Crim.App.1976) for the proposition that the trial court "should have" included the definition in the charge. *Hart* does not address the question of waiver. The appel-

lant in *Hart* properly preserved error by requesting the instruction in substantially correct wording. *Id.* at 22.

The general rule is that failure to object waives error, if any. *See Milton v. State,* 686 S.W.2d 250 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd); *Parker v. State,* 649 S.W.2d 46 (Tex.Crim.App.1983), *cert. denied,* 464 U.S. 997, 104 S.Ct. 496, 78 L.Ed.2d 689 (1983). Appellant's complaint does not present fundamental error in the jury charge. *Kleese v. State,* 680 S.W.2d 664 (Tex.Cr.App.—Fort Worth 1984, pet. ref'd). We hold that appellant waived error, if any, by failing to object to the omission of a definition of insanity. *See generally, Mosley v. State,* 686 S.W.2d 180 (Tex. Crim.App.1985); *Meadowes v. State,* 368 S.W.2d 203 (Tex.Crim.App.1963); *Davis v. State,* 690 S.W.2d 20 (Tex.App.—Beaumont 1985, pet. ref'd); *Mouton v. State,* 627 S.W.2d 765 (Tex.App.—Houston [1st Dist.] 1981, no pet.). Appellant's second point of error is overruled.

By his third point of error, appellant contends that the trial court erred in the court's charge on punishment by failing to apply the law to the facts when it instructed the jury on temporary insanity caused by intoxication. Appellant timely objected to the lack of such an application.

The Court's charge to the jury during the punishment phase included the following instruction:

> You are instructed that under our law neither intoxication nor temporary insanity of mind caused by intoxication shall constitute any defense to the commission of crime. Evidence of temporary insanity caused by intoxication may be considered in mitigation of the penalty attached to the offense.

> By the term "intoxication" as used herein is meant disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

Appellant requested that the court include the following language:

> Now, if you find from the evidence that the Defendant Meliton Lugo, at the time of the commission of the offense, was laboring under temporary insanity, produced by voluntary intoxication, then you may take such temporary insanity into consideration in mitigation of the penalty which you assess.

We have found no cases discussing the need, if any, of applying the law to the facts in the charge of the court during the punishment phase. All of the cases which we have unearthed, and those cited by appellant, deal with failure to apply the law to the facts during the guilt/innocence phase of the trial. *See Williams v. State,* 622 S.W.2d 578 (Tex.Crim.App.1981); *Ex Parte Clark,* 597 S.W.2d 760 (Tex.Crim. App.1979); *Williams v. State,* 547 S.W.2d 18 (Tex.Crim.App.1977); *Perez v. State,* 537 S.W.2d 455 (Tex.Crim.App.1976); *Harris v. State,* 522 S.W.2d 199 (Tex.Crim.App. 1975).

The function of the court's charge is to lead the jury in its deliberations and to prevent confusion. *Williams v. State,* 547 S.W.2d at 20. The law given to the jury during the guilt/innocence phase *must* be followed. On the other hand, the law given to the jury during the *punishment* phase regarding mitigation of punishment due to temporary insanity caused by intoxication *may* be followed by the jury, if it so chooses.

Essentially, the only difference between the charge as submitted and the charge requested by appellant is a "personification" of the charge by inserting appellant's name. Other than this, it is merely a different way of stating the same information.

The charge as submitted was sufficient to lead the jury in its deliberations. Furthermore, we fail to perceive how the jury could be confused by the charge as submitted. The jury knew who the instruction applied to and knew what offense was involved. We find no error. Appellant's third point of error is overruled.

By his fourth point, appellant contends that the trial court erred in submitting instructions on parole law pursuant to Tex.Code Crim.Proc.Ann. art. 37.07, § 4 (Vernon Supp.1987). Specifically, appellant argues that article 37.07 is unconstitutional because it violates the "separation of powers" doctrine of Tex.Const. art. II § 1.

Several Texas courts of appeals, including this Court, have recently held that art. 37.07 § 4 does not violate the separation of powers doctrine. *Gaines v. State*, 723 S.W.2d 302 (Tex.App.—San Antonio 1987, granted); *Joslin v. State*, 722 S.W.2d 725 (Tex.App.—Dallas 1986, no pet.); *Zaragosa v. State*, 721 S.W.2d 429 (Tex.App.—Corpus Christi 1986, no pet.); *Clark v. State*, 721 S.W.2d 424 (Tex.App.—Houston [1st Dist.] 1986, no pet.); *Patton v. State*, 717 S.W.2d 772 (Tex.App.—Fort Worth 1986, no pet.). Appellant's fourth point is overruled.

By his fifth and final point, appellant contends that the trial court erred in failing to instruct the jury on the defense of insanity in the charge during the guilt/innocence phase of the trial.

 Temporary insanity due to voluntary intoxication is not a defense to a crime. *Craig v. State*, 594 S.W.2d 91 (Tex.Crim.App.1980); *Hanks v. State*, 542 S.W.2d 413 (Tex.Crim.App.1976); *Seek v. State*, 646 S.W.2d 557 (Tex.App.—Houston [1st Dist.] 1982, no pet.); Tex. Penal Code Ann. § 8.04 (Vernon 1974). There was no evidence that appellant's intoxication was involuntary.

Appellant contends that other evidence raised the issue of insanity. In order to be entitled to an instruction on insanity, there must be evidence which raises the issue that "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." Tex. Penal Code Ann. § 8.01 (Vernon Supp 1987).

The evidence in this case reveals that appellant was arrested for DWI on December 22, 1984. A search of appellant failed to reveal a pocket knife in his pants pocket.

Appellant was transported to the County Jail where an intoxilyzer test was performed. Officer Casey was preparing to video tape appellant when appellant pulled out his knife and began stabbing Officer Casey. Officer Casey was seriously injured, but recovered.

Appellant testified that his wife had died on November 5, 1984, after a long bout with cancer. He had been depressed and had been drinking heavily since her death, and had been drinking prior to his arrest. Appellant claimed to have no recollection of the stabbing incident: "I don't know what happened, what came over me."

Officer Casey testified that, as he and appellant were entering the video room, appellant said "what are you gonna do, now, you gonna beat the hell out of me, or what?" Officer Casey stated that he "could tell that [appellant's] demeanor was starting to change."

The intoxilyzer operator described appellant as "very nervous." Several other officers described appellant's behavior as "abnormal," "aggressive," and "agitated." Another officer described appellant's actions as "kind of like he went crazy, for a minute I guess, lost his mind for a minute, or something, I guess." This officer also testified that he did not mean that appellant was insane, but "acted like he wanted to kill somebody."

This evidence is insufficient to raise the issue of insanity. *See Still v. State*, 709 S.W.2d 658 (Tex.Crim.App.1986); *Denison v. State*, 651 S.W.2d 754 (Tex.Crim.App. 1983); *Seek v. State*, 646 S.W.2d at 561. Appellant's fifth point of error is overruled.

The judgment of the trial court is AFFIRMED.